## Richmond

CURTIS LEE BARNETT v. COMMONWEALTH OF VIRGINIA.

December 1, 1969.

Record No. 7192.

Present, All the Justices.

*John C. Cowan* (*Franklin & Rawlings*, on brief), for plaintiff in error.

*D. Gardiner Tyler, Assistant Attorney General* (*Robert Y. Button, Attorney General,* on brief), for defendant in error.

GORDON, J., delivered the opinion of the court.

Defendant Curtis Lee Barnett stands convicted of grand larceny after trial on an indictment charging that he stole articles belonging to one George Sharp. The question on this appeal is whether articles that were in Barnett's possession shortly after the theft were sufficiently identified as articles stolen from Sharp.

Sharp lived in a home in Stafford County located, according to his testimony, on Route 600 two miles after "you turn left off 218 at John Williams Store". Sharp testified that when he returned from work at about 5:00 p.m. on February 27, 1968, he discovered that the following articles had been stolen from his home: a set of Holiday Supreme tires, a .22 Remington automatic rifle, model 551 with a telescope, a typewriter and a wristwatch.

The testimony of a cab driver, Murray Varker, showed that Barnett was in the vicinity of Sharp's home on the morning of February 27, 1968. That morning Varker received a radio call "to go down 218 and turn left at Williams Store and there would be a man standing beside the road about two or three miles down that road, to pick him up. . . ." Answering that call, Varker drove on Route 218 to Williams Store, turned left, and after driving an undisclosed distance, saw Barnett standing on the side of the road.

At Barnett's direction Varker drove to an unidentified house, which was about 350 feet away, where Barnett got out of the cab and returned carrying four Holiday Supreme tires. Then Varker drove about 300 feet and stopped on the side of the road. Barnett got out of the cab again, went into woods near the road and returned carrying a typewriter and a Remington automatic rifle with a telescope.

Varker drove Barnett to two places in Fredericksburg where Barnett left the tires and the rifle. Then Varker drove Barnett to another place, where he got out of the cab with the typewriter in his hand.

The tires and rifle that were in Barnett's possession on February 27 were produced at his trial. Sharp was not asked to, and did not, identify them as articles belonging to him or taken from his home.

Defense counsel contends that the articles in Barnett's possession on the day of the theft were not sufficiently identified to support his conviction of larceny as charged in the indictment.

The evidence produced at Barnett's trial shows only that on the day of the theft he was in the vicinity of Sharp's home and in possession of articles meeting the general description of those stolen from Sharp. Before Barnett's trial the Commonwealth had acquired possession of some of those articles, and they were produced at the trial. Although Sharp took the stand, he did not identify any of those articles or even express an opinion whether they belonged to him. So the person who was in the best position to prove the Commonwealth's case or to acquit Barnett gave no testimony on this crucial issue.

There is no suggestion that Sharp could not have specifically identified any of the articles produced at the trial. His unexplained failure to make an identification takes this case outside those relied on by the Attorney General, *Kelly* v. *Commonwealth*, 181 Va. 576, 26 S.E.2d 63 (1943) (involving a merchant's inventory of suits whose labels had been removed), and *Gravely* v. *Commonwealth*, 86 Va.

396, 10 S.E. 431 (1889) (involving flour). The stolen articles in those cases were not capable of specific identification.

This case is controlled by our decision in *Maughs* v. *City of Charlottesville*, 181 Va. 117, 23 S.E.2d 784 (1943), where the indictment charged that Maughs had stolen tie plates belonging to the C&O Railroad. The evidence showed that Maughs had been on Railroad property and that he had possession of railroad tie plates of the same character as plates owned by the Railroad. But since the Commonwealth failed to prove that the plates had been stolen from the Railroad or belonged to the Railroad, we reversed Maughs' conviction of larceny.

The case is remanded for a new trial, if the Commonwealth be so advised.

*Reversed and remanded.*