COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Elder and Senior Judge Cole
Argued at Richmond, Virginia


MATTHEW LEE MCKINNEY

                                        MEMORANDUM OPINION[*] BY
v.          Record No. 1129-96-2        JUDGE LARRY G. ELDER
                                           MAY 13, 1997
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF HENRICO COUNTY
                     Buford M. Parsons, Jr., Judge


            Robert J. Wagner (Wagner & Wagner, on brief),
            for appellant.

            Eugene Murphy, Assistant Attorney General
            (James S. Gilmore, III, Attorney General, on
            brief), for appellee.


     Matthew Lee McKinney appeals his convictions of statutory

burglary in violation of Code § 18.2-91 and second offense petit

larceny in violation of Code § 18.2-96 and § 18.2-104.  He

contends that the evidence was insufficient to support his

convictions.  For the reasons that follow, we reverse.

                               I.

                             FACTS

     Between 9:00 a.m. and 1:00 p.m. on November 1, 1995, someone

broke into the victim's residence through a rear window and stole

two bottles of wine, a clock radio, a woman's brassiere, and a

knitting bag.  The victim resides in a town house that is

--------

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

situated within a row of eight town homes.  Appellant was arrested two weeks later at his apartment several miles away from the victim's residence and charged with statutory burglary and second offense petit larceny.

At trial, the only evidence linking appellant to the crime was the testimony of the victim's neighbor.  The neighbor testified that at about 12:00 p.m. on the day of the crime, he saw appellant drive up and park his van in front of the row of town homes.  Appellant exited his van, walked down the sidewalk adjacent to the town homes, and stared momentarily at the victim's residence.  He then walked behind the row of town homes, where the neighbor saw him walking towards the victim's residence.  Later, the neighbor saw appellant walking briskly towards his van carrying a bag that "looked heavy."  The trial court overruled appellant's motion to strike and convicted him of burglary and second offense petit larceny.

## II.

### SUFFICIENCY OF THE EVIDENCE

The record contains no direct evidence establishing that appellant was ever inside the victim's residence.  Thus, the only issue on appeal is whether the circumstantial evidence was sufficient to prove that appellant was the person who broke into the victim's residence and stole her property.  Appellant contends it is not, and we agree.

When considering the sufficiency of evidence on appeal in a

criminal case, this Court views the evidence in a light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. See Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). "Where the Commonwealth's evidence as to an element of an offense is wholly circumstantial, 'all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence.'" Moran v. Commonwealth, 4 Va. App. 310, 314, 357 S.E.2d 551, 553 (1987) (citation omitted). "It is not sufficient that the evidence create a suspicion of guilt, however strong, or even a probability of guilt, but must exclude every reasonable hypothesis save that of guilt." Webb v. Commonwealth, 204 Va. 24, 34, 129 S.E.2d 22, 29 (1963). Thus, the evidence must "establish . . . guilt beyond a reasonable doubt." Id.

In order to obtain a conviction of statutory burglary under Code § 18.2-91, the Commonwealth must prove that the accused "commit[ed] any of the acts mentioned in Code § 18.2-90 with intent to commit larceny . . . ." The acts mentioned in Code § 18.2-90 include breaking and entering a dwelling house during the daytime. Larceny is "the wrongful taking of the goods of another without the owner's consent and with the intention to permanently deprive the owner of possession of the goods." Bright v. Commonwealth, 4 Va. App. 248, 251, 356 S.E.2d 443, 444 (1987). In a prosecution for burglary, it is well established

that:

> upon proof of a breaking and entering and a theft of goods, and if the evidence warrants an inference that the breaking and entering and the theft were committed at the same time by the same person and as part of the same transaction, "the exclusive possession of the stolen goods shortly thereafter, unexplained or falsely denied, has the same efficiency to give rise to an inference that the possessor is guilty of the breaking and entering as to an inference that he is guilty of the larceny."

Sullivan v. Commonwealth, 210 Va. 201, 203, 169 S.E.2d 577, 579 (1969) (quoting Drinkard v. Commonwealth, 163 Va. 1074, 1083, 178 S.E. 25, 28 (1935)).

We hold that the evidence was insufficient to prove that appellant was the person who burgled the victim's residence. Although the evidence in the record raises a suspicion that appellant was the person who broke into appellant's residence and stole her property, it is insufficient to support the inference that appellant actually committed the offenses.

While the evidence supports the conclusion that the burglary of the victim's town house and the larceny of her property were committed at the same time by the same person, the remaining circumstantial evidence does not establish that appellant ever had possession of property stolen from the victim's residence. Specifically, the only evidence describing the bag carried by appellant -- the testimony of the neighbor -- was insufficient to prove that it was the victim's stolen knitting bag.

The victim testified that the bag stolen from her residence was made of red cloth and that it had "a picture like a fox hunting scene on it." She also testified that the stolen bag had a size and shape "similar to a knitting bag [or] a yarn bag." The neighbor testified that the bag carried by appellant was made of red cloth and "had two handles on it." However, his testimony failed to correspond with the victim's description of her knitting bag in two pivotal respects. The neighbor did not describe the size or shape of appellant's bag and no evidence established that its size and shape were similar to a knitting bag. In addition, the neighbor testified only that the bag was "red" and did not indicate that it was decorated with a printed image. That evidence was not sufficient to prove the offense beyond a reasonable doubt because it merely proved that the item was "roughly similar to an article which had been stolen." Griffith v. Commonwealth, 213 Va. 50, 51, 189 S.E.2d 366, 367 (1972).

Moreover, the neighbor did not testify whether or not appellant was carrying the bag when he initially walked behind the town homes towards the victim's residence. Thus, the evidence does not exclude the reasonable hypothesis that appellant was at the victim's neighborhood for some other purpose and was carrying a two-handled bag that was either larger or smaller than a knitting bag and coincidentally happened to be red.

Because the record does not prove that appellant ever had "exclusive possession of [the victim's] stolen items," the evidence was insufficient to support the inference that appellant was the person who broke into the victim's residence and stole her property.  See id.

For the foregoing reasons, we reverse the convictions of statutory burglary and second offense petit larceny.

Reversed.

Cole, J., dissenting.

I respectfully dissent because the circumstantial evidence presented at trial was sufficient to support the convictions.

The Commonwealth's evidence was not in dispute and was not impeached in any manner. The town house home of Tracey Chapman was burglarized, and personal property consisting of two bottles of wine, a bottle of champagne, a clock radio, a lace bra and a red cloth bag was stolen between 9:00 a.m. and 1:00 p.m. on November 1, 1995. During these four hours, Chapman was at work, the home was unoccupied and all doors and windows were locked except one window next to the back door which was open about one inch. When she returned home for lunch at 1:00 p.m., Chapman found the back door unlocked and the window screen removed; the house had been ransacked and was in disarray. The only issue before this Court is whether the circumstantial evidence is sufficient to support the defendant's convictions as the criminal agent. For the reasons that follow, I find credible evidence in the record to support the findings of the fact finder.

The chief witness for the Commonwealth was George Hauck, a neighbor who lived three town houses from Chapman. Around noon on the day in question, Hauck saw from his town house front window the defendant exit a van that was parked in one of Hauck's family member's assigned parking spaces. The fact finder could infer from this that the defendant did not reside in the town house complex, for if he did, he would have parked in his own

-7-

assigned space.  If he had come to visit someone on business or otherwise, he would have parked in the space for the person being visited or in a space designated for short-term visitors.

The defendant walked down the sidewalk towards Hauck's town house.  About halfway down, he stopped and stared at the Chapman town house.  Hauck testified that the defendant looked like he knew where he was going because he did not look in the direction of any of the other town houses.  The fact finder could infer from this evidence that the defendant knew which home he intended to visit and that he stopped there to case it to insure no one was present before breaking and entering the house.

The defendant then walked to the back of the Chapman home. Hauck went to his back door in order to better observe the defendant.  He watched the defendant walk to the rear of the Chapman house where he disappeared out of Hauck's sight.  This evidence placed the defendant at noon at the scene of the crime.  The breaking and entry into the Chapman house occurred at the back door of her town house.  Hauck testified that at this time he observed no other persons present in the area.

Hauck went back to the front of his town house.  A little later, the defendant walked past Hauck and returned to his van. Hauck testified that when the defendant first entered the complex, he "eased down the sidewalk."  He described in detail defendant's every movement as he exited the van to go to the rear of the Chapman home.  At no time did he mention that the

defendant was carrying anything with him. The fact finder was entitled to infer from this that the defendant did not carry a red cloth bag to the rear of the Chapman home. When the defendant reappeared from the rear of the Chapman house to return to the van, Hauck characterized his pace as "pretty fast" and "brisk." The fact finder could infer from this that the defendant was making a conscious effort to hurriedly flee the scene of the crime in order not to be detected or caught.

Hauck testified that "he walked by me towards his van carrying a red bag." He described the bag in the following manner: "[I]t looked heavy, but you know, it wasn't folded up, it was open, it had two handles on it." He stated the bag was cloth.

The fact finder was entitled to infer from all of the evidence that the defendant did not have a red bag with him when he approached the Chapman home. He was entitled to infer that the defendant stole Chapman's red cloth knitting bag to hold the other stolen articles. Hauck said the red cloth bag "looked heavy." The fact finder was entitled to infer from this evidence that it looked heavy because, instead of or in addition to containing knitting, it contained two bottles of wine, a bottle of champagne, a clock radio and a bra. The red cloth bag was a perfect container for concealing and transporting the stolen items.

Chapman testified that the bag stolen from her residence was

made of cloth and that it had "a picture like a fox hunting scene on it." She also testified that the stolen bag had a size and shape "similar to a knitting bag [or] a yarn bag." Hauck testified that the bag carried by the defendant was made of red cloth and "had two handles on it."

In analyzing the descriptions of the bag given by the owner, Chapman, and by Hauck, I will first look at the similarities between them. Chapman said her stolen bag was both "cloth" and "red." Hauck said the bag he saw in the defendant's possession was both "cloth" and "red." These identical descriptions contained obvious similarities that would be immediately observable by anyone viewing the bag as they pertained to the bag's physical, external appearance.

The majority opinion says that Hauck did not describe the size or shape of the bag and no evidence established that its size and shape were similar to a knitting bag of the type stolen from Chapman. I believe that it is common knowledge that a knitting bag is an item that is big enough to carry knitting supplies, such as needles, skeins of yarn, and the work product thereof, such as a sweater or other item of clothing being knitted. Hauck was not asked to approximate the size of the bag, however, he did say it had two handles, it looked "heavy" and it was open. I believe the fact finder could infer from this that it had sufficient size to accommodate either knitting supplies or the fruits of defendant's crime. No doubt the fact finder

considered this along with the other evidence concerning motive,
time, place, means and conduct.

Moreover, during Chapman's testimony, she indicated that
police investigators arrived to question her about possible
stolen items.  In describing the stolen items, she testified:

> And the bag, also, that I noticed later, I
> didn't know until later when it was described
> to me, that it was actually missing . . . .

From this, the fact finder could infer that Chapman was unaware
that her knitting bag had been taken until the police questioned
her and described the bag to her.  If Chapman did not tell them
about it, then they must have acquired such information from
Hauck.  Thus, Hauck's description was clearly sufficient to make
the owner recall her similar bag and become aware that it was
gone.

As to the fox hunting scene on the bag, the evidence
disclosed that this bag was inherited from Chapman's mother.  We
have no evidence whether the bag was faded with time, printed in
pastel colors, or printed on one side only.  Therefore, we do not
know whether it was possible for Hauck to clearly see and
identify the picture.  If the scene appeared on only one side, it
may have been on the side of the bag facing away from Hauck.  No
doubt the fact finder evaluated all of these matters together
with all of the evidence in the case.  At a minimum, the fact
finder knew as a conclusive fact that a red cloth bag was stolen
from the Chapman house and that the defendant who was present

outside that house was seen carrying a red cloth bag a short distance from the Chapman house. The conclusions about size, shape and a printed image are nothing more than conjecture and surmise.

The majority opinion concludes that "the evidence does not exclude the reasonable hypothesis that appellant was at the victim's neighborhood for some other purpose and was carrying a two-handled bag that was either larger or smaller than a knitting bag and coincidentally happened to be red." The Supreme Court has said many times, as has this Court, that "the Commonwealth need only exclude <u>reasonable</u> hypotheses of innocence that flow from evidence, not those that spring from the imagination of the defendant." <u>Hamilton v. Commonwealth</u>, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993) (emphasis added). The fact finder has the duty to draw inferences from circumstantial evidence and to determine the weight to be ascribed to such evidence. <u>See</u> <u>Schneider v. Commonwealth</u>, 230 Va. 379, 382, 337 S.E.2d 735, 737 (1983). The inferences drawn from circumstantial evidence are within the province of the fact finder and not the appellate court so long as the inferences are reasonable and justified. <u>See</u> <u>O'Brien v. Commonwealth</u>, 4 Va. App. 261, 263-64, 356 S.E.2d 449, 450 (1987). "[W]e consider the evidence as a whole in deciding whether it is sufficient to support the [trial court's] findings that [the accused] was the perpetrator of the crimes." <u>Chichester v. Commonwealth</u>, 248 Va. 311, 330, 448 S.E.2d 638, 650

(1954).  "While no single piece of evidence may be sufficient, 'the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'"  Stamper v. Commonwealth, 220 Va. 260, 272-74, 257 S.E.2d 808, 817-18 (1979) (upholding reasonable inferences that crime was committed by former employee, that requisite robbery occurred, and that car seen near murder scene at approximate time of crimes was Stamper's wife's car) (citation omitted).

The test which we must apply is whether the circumstances which were proved concur in pointing to the defendant's guilt beyond a reasonable doubt.  The evidence does not show that the defendant was in the victim's neighborhood for some other purpose when he was seen carrying a red cloth knitting bag.  Therefore, the defendant's contentions do not flow from any evidence in the record.

Neither Chapman nor Hauck know the defendant or had seen him before this occurrence.  It is not reasonable to believe that on November 1, 1995, during the four hours between 9:00 a.m. and 1:00 p.m., two different persons appeared at the back of the Chapman home and that both of them coincidentally carried red cloth bags.  The fact finder found that there was only one person present.  It is undisputed that the defendant was there.  The evidence does not disclose the presence of any other person.  There is no evidence in the record from which one can reasonably

infer that any other person was present.

Considering the evidence as a whole and according the fact finder all of the inferences fairly deducible therefrom, I would hold that there is sufficient credible evidence in the record to support the trial court's determination that the defendant committed the crimes. I cannot say the trial judge as fact finder was clearly wrong.