COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Humphreys, Beales and Huff
Argued at Chesapeake, Virginia


RICHARD LEE JOHNSON, JR.

                                      MEMORANDUM OPINION[*] BY
v.       Record No. 0256-13-1           JUDGE RANDOLPH A. BEALES
                                        DECEMBER 17, 2013

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Randall D. Smith, Judge

Kathleen A. Ortiz, Public Defender (Office of the Public Defender,
on brief), for appellant.

Victoria Johnson, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Richard Lee Johnson, Jr. (appellant) appeals his conviction for grand larceny, in violation of

Code § 18.2-95. Appellant argues that the trial court erred in finding that the Commonwealth

introduced sufficient evidence for a grand larceny conviction. Specifically, appellant contends that

the evidence was insufficient since the manhole covers that "he had possession of were indistinct

and fungible goods, which could not be sufficiently proven to be property of Pam Joy [Realty]" and

that there was no evidence that the manhole covers he possessed were actually stolen. We hold that

the trial court did not err when it found that the Commonwealth had introduced evidence sufficient

for a grand larceny conviction, and, accordingly, for the following reasons, we affirm appellant's

conviction for grand larceny.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

# I. BACKGROUND

We consider the evidence on appeal "'in the light most favorable to the Commonwealth, as we must since it was the prevailing party'" in the trial court. Beasley v. Commonwealth, 60 Va. App. 381, 391, 728 S.E.2d 499, 504 (2012) (quoting Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004)).

In this case, John Tillery, who worked for Pam Joy Realty as a property manager of Holly Point Shopping Plaza, testified that, sometime between December 1 and December 14 of 2011, he noticed that two manhole covers were missing from the Holly Point Shopping Plaza parking lot. John Tillery testified that somebody from Pam Joy Realty is on-site six days a week to clean and check the parking lot for signs of vandalism, including missing manhole covers, and that it was one of these Pam Joy Realty employees who brought the fact of the missing manhole covers to John Tillery's attention. In order to replace the two manhole covers, John Tillery purchased two new manhole covers -- each of which cost $125 -- from a business in Virginia Beach.

Shortly after replacing the two manhole covers, John Tillery received notice that three additional manhole covers were missing from Holly Point. Suspecting that somebody might be stealing manhole covers and taking them to a scrap metal yard, John Tillery and his son, Logan Tillery, went to Baldwin Auto Disposal (Baldwin), which is somewhere between three and five miles away from Holly Point Shopping Plaza. When John and Logan Tillery arrived at Baldwin, they noticed three manhole covers that appeared consistent with the three manhole covers that were missing from Holly Point Shopping Plaza. John Tillery did acknowledge that these three manhole covers did not bear any sort of marking or identification that would allow for easy identification of the manhole covers from Holly Point Shopping Plaza. In addition, Logan Tillery acknowledged that a manhole cover recovered from Baldwin could have fit other manholes in the City of Chesapeake. Nevertheless, when the Commonwealth asked John Tillery, "And are you able to say

that the manhole covers that you recovered from Baldwin Auto were the ones that belonged on the Pam Joy Realty property," John Tillery responded, "Yes." In addition, John Tillery testified that the manhole covers from Baldwin fit the manholes in Holly Point Shopping Plaza, and he also stated that he identified the manhole covers from Baldwin by their appearance, rectangular shape, and thickness. Logan Tillery also testified that the manhole covers from Baldwin were "an exact fit" and that he and John Tillery had "measured" the manhole covers.

Christie Perry, an employee at Baldwin, testified that Baldwin does not take manhole covers because "they're just too easy to take off the side of the street," but that appellant did deliver "four or five" manhole covers on December 14, 2011. Perry testified that she was quite familiar with appellant, as he had been appearing at Baldwin "at least once a day or once every other day" for "a couple of months." Perry testified that, prior to December 14, 2011, appellant had not taken any manhole covers to Baldwin, but Perry did acknowledge that she was not present at Baldwin each time appellant came to Baldwin.

Perry testified that appellant's van was weighed on Baldwin's scale, that the metal inside the van was unloaded, and that appellant's van then was re-weighed. During the unloading process, according to Perry, the crane operator noticed that manhole covers were included in appellant's load of scrap. With the assistance of the crane operator, Perry set the manhole covers aside, photographed them, and then notified the police. Before leaving Baldwin, appellant stopped by Perry's desk, showed her his driver's license, and signed a form acknowledging that he was the sole owner of the property he dropped off and that he was bringing in the property "with permission to scrap." At trial, the Commonwealth presented a picture of appellant's driver's license and a picture of the vehicle that appellant drove to Baldwin on December 14, 2011. Perry testified that, from the time appellant entered Baldwin to the time Perry received notice from the crane operator that

appellant had dropped off manhole covers, no other individuals were at Baldwin attempting to drop off metal.

Detective Satterfield of the Chesapeake Police Department testified that, after meeting with Perry, he met with John Tillery. According to Detective Satterfield, John Tillery told Detective Satterfield that all three manhole covers fit the uncovered manholes and that each manhole cover "was not interchangeable with the other" in terms of how each fit over the uncovered manholes. According to Detective Satterfield, when he went to Baldwin after Perry contacted him, and after the three manhole covers had been recovered from Baldwin, "there were two other manholes at [Baldwin] as well." Detective Satterfield testified that those two manhole covers looked similar to the three manhole covers John and Logan Tillery recovered from Baldwin, but that "Mr. Tillery said they were not his." Detective Satterfield also met with appellant. When Detective Satterfield showed appellant the picture of his van and his driver's license, and advised him that he took manhole covers into Baldwin, appellant told Detective Satterfield that "he didn't do that."

## II. ANALYSIS

Appellant's assignment of error challenges the sufficiency of the evidence to support his grand larceny conviction. When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner, 268 Va. at 330, 601 S.E.2d at 574, "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Crowder, 41 Va. App. at 663, 588 S.E.2d at 387 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)). See also Maxwell v. Commonwealth, 275 Va.

437, 442, 657 S.E.2d 499, 502 (2008). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

Code § 18.2-95 states, in relevant part, "Any person who . . . commits simple larceny not from the person of another of goods and chattels of the value of $200 or more . . . shall be guilty of grand larceny . . . ." It is well settled that "[t]he crime of larceny requires proof that the property of another has been stolen—that is, taken unlawfully with the intent to permanently deprive the owner of the possession thereof." Lew v. Commonwealth, 20 Va. App. 353, 355, 457 S.E.2d 392, 393 (1995) (citing Maughs v. City of Charlottesville, 181 Va. 117, 121, 23 S.E.2d 784, 786 (1943)). In addition, "Evidence offered to prove the *corpus delicti* in a trial for larceny is insufficient where the evidence fails to prove that property has been stolen from another or where property found in the accused's possession cannot be identified as having been stolen." Id. (citing Maughs, 181 Va. at 121, 23 S.E.2d at 786). In order to prove the crime of grand larceny:

> "It is not necessary that the identity of stolen property should be invariably established by positive evidence. In many such cases identification is impracticable, and yet the circumstances may render it impossible to doubt the identity of the property, or to account for the possession of it by the accused upon any reasonable hypothesis consistent with innocence."

Id. at 357, 457 S.E.2d at 394 (quoting Gravely v. Commonwealth, 86 Va. 396, 402, 10 S.E. 431, 433 (1889) (citation omitted)).

Viewing the evidence in the light most favorable to the Commonwealth (as we must since it was the prevailing party at trial), a rational trier of fact could find that appellant stole the manhole covers from the shopping center parking lot owned by Pam Joy Realty. Several circumstances from the record, each mounting upon the others, support this conclusion. See Ervin v. Commonwealth, 57 Va. App. 495, 515, 704 S.E.2d 135, 145 (2011) (*en banc*). In this case, John Tillery testified that, sometime between December 1 and December 14, 2011, a total of five manhole covers went

- 5 -

missing from Holly Point Shopping Plaza. Perry testified that on December 14, 2011, appellant dropped off "four or five" manhole covers at Baldwin. Baldwin is approximately three to five miles away from Holly Point Shopping Plaza. Thus, within a thirteen-day time period five manhole covers were stolen from Holly Point Shopping Plaza. Furthermore, within that same thirteen-day time period, appellant dropped off "four or five" manhole covers at Baldwin, which is only a short distance away from Holly Point Shopping Plaza. John Tillery also testified that the manhole covers that he recovered from Baldwin were the ones that belonged on the shopping center property that was owned by Pam Joy Realty. In addition, Perry testified that appellant delivered a load of scrap metal to Baldwin on December 14, 2011 that included the manhole covers and that he stopped by her office, displayed his driver's license, and signed a receipt stating "that he is the sole owner of the property [and] that he's bringing it in with permission to scrap" it. See Bright v. Commonwealth, 4 Va. App. 248, 251, 356 S.E.2d 443, 444 (1987) (noting that once it has been established that a larceny has occurred, "the unexplained possession of recently stolen goods permits an inference of larceny by the possessor").

Although there were no markings on the manhole covers that identified them as belonging to Holly Point Shopping Plaza, and although the record does not suggest that John Tillery had to order custom-made manhole covers when he bought two new manhole covers at a store in Virginia Beach, this is not dispositive of the question before us. As the Supreme Court has held, "When an accused is found in possession of goods of a type recently stolen, strict proof of identity of the goods is not required." Henderson v. Commonwealth, 215 Va. 811, 812-13, 213 S.E.2d 782, 783 (1975) (citing Cook v. Commonwealth, 214 Va. 686, 687, 204 S.E.2d 252, 253 (1974) (citation omitted)). Instead, the identity of stolen goods may be established by circumstantial evidence. Id. at 813, 213 S.E.2d at 784.

In a circumstantial evidence case, the "combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion." Dowden v. Commonwealth, 260 Va. 459, 470, 536 S.E.2d 437, 443 (2000). Here, the combined force of the several circumstances in the record suggests that a fact finder reasonably "could have rejected [appellant]'s theor[y] in his defense and found him guilty . . . beyond a reasonable doubt." Commonwealth v. Hudson, 265 Va. 505, 513, 578 S.E.2d 781, 785 (2003).

Christie Perry testified that appellant arrived at Baldwin with "four or five" manhole covers on December 14, 2011. John Tillery testified that five manhole covers went missing from Holly Point Shopping Plaza *no more than* thirteen days prior to December 14, 2011. Although the manhole covers that went missing from Holly Point Shopping Plaza were not marked with any sort of identifier, John Tillery stated that he identified three manhole covers from Baldwin based on their appearance, rectangular shape, and thickness. Detective Satterfield testified that although the two manhole covers that remained at Baldwin after John and Logan Tillery left Baldwin with three manhole covers looked similar to the other three manhole covers, John Tillery had indicated to Detective Satterfield that those two manhole covers were not his. However, that does not matter for purposes of our analysis because the question is whether appellant took the three manhole covers that were recovered from Baldwin by Tillery, who testified that they were the manhole covers that had been stolen from the property and fit the manholes. Viewing the evidence in the light most favorable to the Commonwealth (as we must since the Commonwealth prevailed below), a rational trier of fact could find that at least the three manhole covers that *were* recovered from Baldwin were stolen by appellant. The trial court was entitled to find that Logan Tillery, John Tillery, Christie Perry, and Detective Satterfield were credible witnesses and that their testimony was entitled to significant weight. See Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995).

Finally, in finding appellant guilty of grand larceny, the trial court was entitled to take into account the fact that appellant denied having taken manhole covers to Baldwin when Detective Satterfield confronted him with evidence that he *had* taken manhole covers to Baldwin. See Covil v. Commonwealth, 268 Va. 692, 696, 604 S.E.2d 79, 82 (2004) (noting that "[a] false or evasive account is a circumstance, similar to flight from a crime scene, that a fact-finder may properly consider as evidence of guilty knowledge").

### III. CONCLUSION

The record establishes that five manhole covers were removed from Holly Point Shopping Plaza sometime between December 1 and December 14, 2011, that appellant dropped off "four or five" manhole covers at Baldwin on December 14, 2011, that Baldwin was only approximately three to five miles away from Holly Point Shopping Plaza, that the three manhole covers that John and Logan Tillery recovered from Baldwin fit the uncovered manholes at Holly Point Shopping Plaza, and that John Tillery testified those recovered manhole covers were the ones that belonged to the shopping center property. Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party below, a rational factfinder could properly find appellant guilty of grand larceny. Accordingly, we affirm the trial court's conviction of appellant for grand larceny under Code § 18.2-95.

Affirmed.